# WHEELING.

## STATE *v.* C & O. R. R. Co.

Submitted January 21, 1884—Decided April 26, 1884.

1. In an indictment for obstructing a public road it is not necessary to allege, that the wrongful act was "knowingly and wilfully done;" it will be sufficient to allege, that the act was done unlawfully or without lawful authority. And if it allege that the act was done "*knowingly and wilfully,*" these words "knowingly and wilfully" will be treated as surplusage. (p. 811.)

2. The Chesapeake and Ohio Railway Company was indicted for obstructing a public road; and the obstruction was shown to have been caused by raising the track of the railway, at the point where it was crossed by the public road. It was competent and material evidence on behalf of the defendant to show, that at the time said road was obstructed, the said railroad at that point was in the possession of and was run by another railroad company. (p. 812.)

3. On the trial of an indictment against the Chesapeake and Ohio Railway Company for obstructing a public road in a certain county it became and was material to ascertain, whether there was any other than the defendants' railroad within the said county; it was error in the circuit court to state in the presence of the jury, that *all the witnesses proved, that there was but one railroad in the said county and that was the railroad of the defendant.* (p. 813.)

WOODS, JUDGE, furnishes the following statement of the case:

At the March term, 1883, of the circuit court of Cabell county the Chesapeake and Ohio Railway Company was indicted for obstructing a public road. The indictment was in the words and figures following:

"THE STATE OF WEST VIRGINIA, CABELL COUNTY, ss.:

"*In the Circuit Court of said County.*

"The grand jurors of the State of West Virginia in and for the body of the county of Cabell, and now attending the said court, upon their oaths present that the Chesapeake and Ohio Railway Company, a corporation, on the 1st day of

102

January, 1883, in the county aforesaid, unlawfully, and without lawful authority, did knowingly and wilfully obstruct, injure and destroy the public road called and known as Hull's road, at and near where the said road intersects the James river and Kanawha turnpike, below the city of Huntington, in said county, against the peace and dignity of the State."

The defendant demurred to the indictment, but the court overruled its demurrer. It then pleaded "not guilty," on which issue was joined. Upon the trial of the issue the jury found the defendant guilty. A motion was made by the defendant to set aside the verdict and award it a new trial, on the ground that the verdict was contrary to the law and the evidence, all of which was set out in the defendant's bill of exceptions, which motion the court also overruled, to which the defendant excepted, as it had also done to certain rulings of the court during the trial, all of which appear in the defendant's bill of exceptions.

The court assessed the defendant's fine at fifty dollars, for which and the costs of the prosecution the court entered judgment against the defendant. To this judgment the defendant obtained a writ of error.

*W. H. Hogeman* for plaintiff in error.

*Attorney-General Watts* for the State.

WOODS, JUDGE:

Section 45 of chapter 14 of the Acts of the Legislature of 1881, under which the defendant was indicted, is an exact re-print of section 53 of chapter 194 of the Acts of 1872–3, and also of section 47 of chapter 43 of the Code of West Virginia, and describes four different offences, each of which is declared to be a misdemeanor: First, any person who shall kill a tree and leave it standing within fifty feet of a road; second, or who shall, without lawful authority, knowingly and wilfully break down and destroy, injure or obstruct any bridge, or any bench or log placed across a stream for the accommodation of travelers; third, or who shall destroy, injure, deface or alter, any guide-board, milestone or milepost; and fourth, or who shall obstruct or injure any road, or ditch, made for the purpose of draining a road.

Here are four different offences, in only one of which the act is required to be done "*knowingly and wilfully*," in order to complete the offence. The public is at all times entitled to the free and unobstructed use of the public road, and whoever, without lawful authority places any obstruction therein, which deprives the public of this right violates this statute, whether the wrongful act was done ignorantly or knowingly, accidentally or wilfully. It was, therefore, unnecessary to allege in the indictment, that the wrongful act of the defendant was committed "knowingly and wilfully." It would have been sufficient to allege, that the act was done *unlawfully*, or *without lawful authority*. The words "knowingly and wilfully" used in the indictment may be treated as surplusage, and then the offence will be described substantially in the words of the statute. We are of opinion that the court did not err in overruling the defendant's demurrer to the indictment.

This construction of the statute, renders it unnecessary in this case, to consider or decide, whether a corporation can be guilty of an offence, where the unlawful act is required to be "knowingly and wilfully" done. But inasmuch as the law is now well settled, that a corporation is liable in civil proceedings for injuries knowingly and wilfully committed by its servants acting under its authority, and is indictable for acts of misfeasance, as well as for non-feasance, we apprehend that when a proper case arises, there will be but little difficulty in applying to it, in criminal cases, for wrongful acts knowingly and wilfully committed in plain violation of law, the same rule as in civil cases.

Before the defendant could be convicted it was incumbent on the State to establish by competent evidence that "Hull's lane road" mentioned in the indictment was at the time the same was alleged to have been obstructed, a *public road;* that the same had been *obstructed* within one year next before the finding of the indictment; and that it had been so obstructed by the *defendant*. Failing to prove either of these facts, the defendant was entitled to an acquittal. It follows therefore, that the defendant had the right to introduce any competent evidence, to show that neither of these facts were true. It had the right to deny and disprove any or all of

them; that it had the right to prove that "Hull's lane road" was a private, and not a public road; that this road had not been so obstructed; and that the defendant had not obstructed said road—are propositions too plain for argument. Now it is not easy to perceive any better way for the defendant to prove that it did not obstruct the road, than to prove that some other person had done so. The evidence on behalf of the State set out in the bill of exceptions shows, that the Hull lane road, where it crossed the railroad line west of Huntington in Cabell county, had at one time been in tolerably good condition, but that in March of this (1883) year, the employes of the railroad running west from Huntington had raised the track of the railway about seven inches higher than it formerly was, and had made it almost impossible to cross the railway with a wagon on the Hull road, and that the ascent to the railway and the descent from it was too steep to cross it hauling sawlogs, as the log would hang on the track in crossing it and made it dangerous in crossing, and that the embankment made by the *company* was seven or eight feet high at the place where the Hull road crosses the railway. On cross-examination of one of the State's witnesses, the defendant's counsel asked him, "who he meant by *they*, or the *company*," to which he replied, that "he *supposed* it was the Chesapeake and Ohio railway, but he did *not know of his own knowledge.*" The defendant's counsel then asked the witness, "if the Elizabethtown, Lexington and Big Sandy railroad, did not run the line of railway from Huntington to the Big Sandy river?" The defendant's counsel also asked another witness for the State on his cross-examination the following question: "Is not the line of railroad extending from Huntington westward to the Big Sandy river in the possession of the Elizabethtown, Lexington and Big Sandy Railroad Company, and was it not in the possession of, and run by said last named company at the time said obstruction was placed in Hull lane road in March?"

The court refused to permit the said witnesses to answer either of these questions, and this forms one of the grounds of the defendant's bill of exceptions. The court then against the protest of the defendant's counsel asked one of the same

witnesses the following questions: "Do you know of any other railroad in Cabell county except the Chesapeake and Ohio railway?" to which the witness answered, "No." "Has Hull's lane road been worked and used as a public road?" to which the witness answered, "Yes." To both of these questions and answers the defendant by its counsel again excepted. *No other mention* was made by any of the witnesses of the Chesapeake and Ohio Railway Company, whereupon the court stated in the presence of the jury, "that all the witnesses proved that there was but one railroad running through the county, and that, the Chesapeake and Ohio railroad." To this remark of the court the defendant again excepted. This statement made by the court in the presence of the jury was well calculated to convince the jurors, that the prisoner was guilty, for if it was true there was no other railroad in the county except the defendant's railroad, and as the court had prevented the defendant from proving that any other railroad company had possession of the defendant's railroad, there was no escape from the conclusion, that in the mind of the court at least, the defendant was the party which obstructed the road. Such a statement was unwarranted by the evidence in the record, unless we assume that the confessed ignorance of a witness, as to a material fact, is equivalent to *knowledge* of the same fact, for the witness only stated that "he supposed the Chesapeake and Ohio railway did it, but he didn't know of his own knowledge," and that he did not know of any other railroad in Cabell county except the Chesapeake and Ohio railway." The statement indicated to the jury, the opinion of the court as to the weight of the evidence, and was therefore on well settled principles unauthorized, for which if there was no other error this Court would reverse the judgment of the circuit court. *State* v. *Hurst,* 11 W. Va. We are at a loss to understand upon what principle or rule of law the court refused to permit the witnesses to answer the questions propounded by the defendant's counsel tending to elicit the fact that at the time the alleged obstruction was placed in Hull's lane road, in the line of railroad running west of Huntington, that portion of railroad line in Cabell county extending westward from Huntington to the Big Sandy

river, was in the actual possession and use of another railroad company. If the defendant had made it appear that that portion of said railroad line at the time and place when and where the obstruction was placed, was in the actual and exclusive use of the Elizabethtown, Lexington and Big Sandy Railroad Company, it would tend to show that the road was obstructed by that company, and not by the defendant. This was a fact material for the defence of the defendant and the evidence sought to be elicited by the defendant's . questions was competent and material in support of that fact, and ought not to have been excluded. We are further of opinion that the circuit court erred in refusing to permit the witness to answer the defendant's said questions.

As this case must be reversed for these errors it will be unnecessary to determine whether the court erred in the form of the question propounded by it to ascertain whether Hull's lane road was a public road, as it is not probable the question on a new trial will be propounded in the same form, for if the form of the question was objectionable the objection can be easily obviated by inquiry whether the road had been worked, and if so, in what manner and by whom worked.

For the reasons before stated the judgment of the circuit court of Cabell county must be reversed, the verdict set aside and a new trial awarded to the defendant.

REVERSED.    REMANDED.