## CHARLESTON.

### STATE *v.* OHIO RIVER R'D CO.

Submitted June 22, 1893.—Decided November 15, 1893.

INDICTMENT—RAILROAD COMPANY—NUISANCE.

    Where a railway company takes and occupies a part of a county road without having condemned it, yet with the consent of the County Court duly given, but on the condition that the company shall restore the county road to its former state, or to such state as will not unnecessarily impair its usefulness, and fails to comply with the condition, the railway company may be proceeded against by indictment for maintaining a nuisance, and fined for obstructing and injuring the county road.

VINSON, MCDONALD & THOMPSON for plaintiff in error cited 24 W. Va. 809; 16 S. E. Rep. 514.

ATTORNEY GENERAL, T. S. RILEY for the State cited 36 W.

Va. 179; Id. 704; 16 S. E. Rep. 519; Id. 514; 17 S. E. Rep. 307.

HOLT, JUDGE:

This is an indictment found in the Circuit Court of Cabell county on August 7, 1889, against the railroad company, for obstructing a public road. Defendant by its attorneys appeared and entered a plea of not guilty. By consent it was submitted to the court, who found defendant guilty, but at the same term set aside the finding and judgment, and ordered trial by jury. The jury found defendant guilty. There was a motion to set aside the verdict, but the court overruling the motion, fixed the fine at fifty dollars and gave judgment therefor. Defendant excepted, and filed a bill of exceptions setting out all the evidence; also, one setting out all the instructions given for defendant, those refused, and the one given as modified over defendant's objection—both signed and made parts of the record.

The law involved and the material facts are as follows:

By the constitution all railroads are declared public highways. Section 9, Art. XI Const. Under clause 6, s. 50, c. 54, of the Code, the County Court of Cabell by order of March 12, 1887, authorized and empowered the Ohio River Railroad Company to construct its railroad as now located in Cabell county, where it interferes with county property, roads, *etc.*, across, along and upon such county property and roads which the route of such railroad shall intersect or touch: but such company shall restore such county-roads thus intersected or touched at its own costs and expenses to their former state, or to such state as not unnecessarily to impair their usefulness, and shall keep the crossings of such county roads in repair. Four commissioners were appointed on behalf of the county, any three of whom could act to accept and receive the road from the railroad company when completed by it as therein indicated, *etc.*

Under this authority the Ohio River Railroad Company, in 1887, constructed its roadbed along the county-road at certain points in the county above the town of Guyandotte,

laid their track and now occupy and use the same. The
company built another, called the "Substituted Road," at
various points generally back from the river, between the
railroad and the hill.

The evidence on behalf of the State is that such substi-
tuted road is not as good as the one taken, not built accord-
ing to the agreement and as required by the order of the
County Court, and was never received by the commis-
sioners. The evidence on the part of defendant tends to
show that the substituted road is as good as the old road,
in some respects better, by being moved back from the
river bank, but, again, being necessarily on ground more
likely to get muddy in the winter time; that the commis-
sioners were satisfied with the substituted road.

But the jury found against the defendant, and, unless
mislead by some erroneous instruction, we must in that state
of the testimony take it that they found correctly.

The grounds of error relied on by the defendant are (1)
statute of limitations; (2) the modifying by the court of
the instructions of defendant; (3) verdict by the jury against
the court's instructions; (4) the refusal of the court to grant
a new trial.

I agree fully, with counsel for defendant, that railroads
should not be needlessly harassed nor dealt with harshly.
They are indispensable in these times as highways; such
our constitution makes and calls them. They indicate the
character and reach of modern civilization. The proceed-
ing by indictment is awkward and stiff at best; and it is
at least doubtful, whether on conviction the railroad track
could be torn up and removed as a nuisance, for it was laid
down in that very place with the sanction of the general
statute and the consent of the County Court. At any rate,
the criminal proceeding has no capacity of adaptation or di-
rect efficiency to bring about the restoration of the county-
road.

One of the civil remedies suggested in *City of Mounds-
ville* v. *Ohio River R. Co.*, 37 W. Va. 92 (16 S. E. Rep. 514)
is better suited to bring about directly what we must infer
to be the main purpose—the restoration of the road. Nev-
ertheless, we have to deal with this case as we find it,

seeing only that the rules of law as settled in such cases have been given to the jury correctly, according to what the testimony tended to prove.

In the case of *City of Moundsville* v. *Ohio River R. Co.*, *supra*, there is a full discussion of this subject by Judge BRANNON, delivering the opinion of the Court, in which the obstruction of ordinary public streets and roads by railroads, under authority of law and with the consent of the town and county authorities, is fully discussed in all its bearings, both as to the offence and the civil injury, and the mode of dealing with it by indictment, *mandamus* and mandatory injunction in the nature of a bill for specific performance; and this is followed by the case of *State* v. *Monongahela River R. Co.*, 37 W. Va. 108 (16 S. E. Rep. 519) an indictment and state of facts similar to the indictment and facts in this case, in which it is held that if a railroad company, under authority from a county court giving it license to build its road upon, along, or across public highways, upon the express condition that it shall restore such highways to their former state, or to such state as not unnecessarily to impair their usefulness, takes possession of a part of a highway and constructs its road upon it, but fails to restore the highway to such state as is required by law, it is guilty of maintaining a nuisance, and may be indicted under section 45, c. 43, of the Code, notwithstanding it has such authority from the County Court.

This indictment is founded on section 45 of chapter 43 of the Code (Ed. 1891, p. 330) : "Any person  *  *  * who shall without lawful authority  *  * obstruct or injure any road, shall be guilty of a misdemeanor, and on conviction thereof shall be fined not less than ten nor more than fifty dollars." See *State* v. *Chesapeake & O. R. R. Co.*, 24 W. Va. 809. This has been the law since July, 1850. See Code 1849, c. 97; Code 1860, p. 490. See *Dimmett* v. *Eskridge*, 6 Munf. 308.

Counsel for defendant quote from *State* v. *Chesapeake & O. R. R. Co.*, 24 W. Va., 809, 811, as follows: "Before the defendant could be convicted, it was incumbent on the state to establish by competent evidence that Howell's lane road (the road in question) mentioned in the indictment,

was, at the time the same was alleged to have been obstructed, a public road; that the same had been obstructed within a year next before the finding of the indictment; and that it had been obstructed by the defendant. Failing to prove either of these facts, the defendant was entitled to an acquittal."

Defendant claims that this was not shown to be a public road. But this defendant recognized it to be a county-road when on March 12, 1887, it moved the County Court for leave to occupy it, and was by order of that date authorized and empowered to construct its railroad as then located, on, along, and across the said county road. Other evidence shows that it was the public road leading from the town of Guyandotte up the Ohio river, through Cabell county, to the Mason county line, and has been used and worked and recognized by the county as a road for many years.

As to the statute of limitations. The act complained of in its inception was in March, 1887, and this indictment was found at the August term, 1889, and defendant claims that it was barred. If it were not shown to have been a continuing offence, it would have been barred.

But in *State* v. *Monongahela River R. Co.*, 37 W. Va. 108 (16 S. E. Rep. 519) a case very much like this, the defendant was held to be guilty of maintaining a nuisance; that the giving of leave to occupy and use the said road for the railroad track was upon the express condition that the company should restore the county-road; that the company can not enjoy the grant and dispense with the condition; that such authority affords no protection for excess beyond departure from or failure to comply with the conditions. See *City of Moundsville* v. *Ohio River R. Co.*, 37 W. Va. 92, (16 S. E. Rep. 514) and cases there discussed. *People* v. *Dutchess & C. R. Co.*, 58 N. Y. 151, 165; 2 Wood, Nuis. c. 23, § 753. It is a continuing offence, and the defendant is under a legal obligation to remove it, and indictable when he suffers it to continue. 1 Bish. Crim. Law (8th Ed.) § 433; Elliott Roads & S. 490, 493.

The instruction No. 1, given on motion of defendant, is based on *Ratcliffe's Case*, 5 Gratt. 657—that if defendant entered upon the road set out in the indictment under a

claim of right, believing it to be its own, and that it had a *bona fide* right thereto, then the jury should find for the defendant—and has no application to the case as a defence in bar; for this offence consisted, not in the act of occupying the old county road (the company had a license to do that) but it was on the condition precedent that the new road substituted for that part of the old one taken should be such a restoration as the law and order of the County Court contemplated and required. The failure of defendant to make such restoration of the old road is the gist of the offence, and it requires no other criminal intent than the intentional occupation of the old road, and the willful neglect or refusal to restore it.

This also disposes of the second ground assigned for error, viz: in improperly modifying instructions of defendant; for the court properly added that, to constitute a defence, the defendant must show, that it had complied with the conditions, under which it was permitted to enter and occupy, set out in the order of consent; and such modification made it consistent with instruction No. 4 given the jury on motion of defendant, which is as follows:

"No 4. The court instructs the jury that if they believe from the evidence in this cause that the defendant made the alterations and changes in the county road where its track occupied the old road, and such alterations and changes restored the county road to its former state, or to such state as did not unnecessarily impair the usefulness of said road at the time such change was made, then you must find for the defendant."

Leaving out of view the subject of crossings, *etc.*, this instruction propounds the law correctly in this state, except where there may be some special reason for charging the company with a continuous duty, and in effect it called upon the jury to apply it to the facts, as they should find them to be according to the evidence, and they returned a verdict of guilty. There is a good deal of testimony tending to show that the defendant had in substance made such restoration, and that the trouble with the new road was that it had to be built back from the river, next to the hill, where the wet weather and freezing through the

winter made it muddy, narrowed it by slips, and put it out of proper width and shape.

On the part of the state, three witnesses were examined, who state that the defendant did not properly restore the old road by the new one, and one of them, a commissioner appointed to receive it, declined to receive on that account; so that no case is made out for a new trial on the ground of the verdict being unwarranted by the evidence, and the judgment must be affirmed.